K. B. KIMBALL, Appellant

v.

JONES–MAHONEY CORPORATION

No. 16717

United States Court of Appeals

Third Circuit

Argued January 30, 1968

Filed May 1, 1968

*See, also, 393 F.2d 724*

VINCENT A. GAMAL, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellant*

WARREN H. YOUNG, ESQ., Christiansted, St. Croix, Virgin Islands, *for appellee*

Before KALODNER, STALEY and SEITZ, *Circuit Judges*

SEITZ, *Circuit Judge*

## OPINION OF THE COURT

Plaintiff appeals from the dismissal of his declaratory judgment action on the merits.

By a contract dated September 9, 1964, the plaintiff agreed to buy and the defendant agreed to sell certain land owned by it and located on the Island of St. Croix. The purchase price was $33,495.00. The agreement recited that $3,349.50 had been paid to the seller as an earnest money deposit. That money was placed in an escrow account with the Virgin Islands Title and Trust Company ("Trust Company"). The "closing" was to take place on or before 30 days from September 9, 1964. At closing the seller was required to deliver a "full Warranty Deed warranting the property to be free and clear of all liens and encumbrances [with immaterial exceptions]."

The agreement then contains the following pertinent paragraph:

*"Title Examination and Default by Seller.*

Buyer shall be allowed thirty (30) days from the date hereof [September 9, 1964] within which to obtain title insurance or to have title to the property examined by an attorney, if he so desires. If the title shall be shown to be defective * * * then Seller shall have ninety (90) days within which to correct such defect in title. If title is not good and merchantable at the time for closing, or not made good and merchantable within the time allowed herein to cure any defect in title, then this agreement shall be voidable at the election of the Buyer and all payments made shall be returned to the Buyer and the Seller shall pay to the Buyer all direct costs and expenses incurred."

467

At some time prior to the closing date, plaintiff became aware of the fact that the property was subject to a tax lien which amounted to almost twice the purchase price. Consequently, performance of the contract was not tendered by the October 9, 1964, closing date. In November 1964, plaintiff wrote the defendant asking for a report as to removal of the lien, and said he was ready to close the transaction when a satisfactory arrangement was made. Defendant replied that if anything could be worked out it would be in touch. In June of 1965 defendant asked plaintiff if he was still interested in buying the property if the lien could be removed. Plaintiff replied that he was ready to close the transaction and indicated that his earnest money was still on deposit with the Trust Company. In January of 1966 plaintiff again made inquiry. Defendant responded that its efforts to remove the lien had been unsuccessful and indicated that it intended to keep trying.

By letter dated February 15, 1966, defendant's attorney advised plaintiff, with a copy to defendant, as follows:

"In reviewing the file, it is apparent to us that the seller will not be in a position to clear the property of the Government tax lien within the forseeable future. Under the circumstances, we feel that it would be better to conclude and resolve the contract of September 9, 1964. According to Paragraph 5 of that contract, you have the election to void the contract in the event that title is not cleared within the 90 additional days allowed to seller, or you have the alternative to purchase the property subject to whatever defect there may be.

"Will you please advise us of your election in this matter. If you wish to void the contract, we will have the Virgin Islands Title and Trust Company refund the down deposit of $3,349.50. We will also have the seller corporation reimburse you whatever reasonable expenses you have incurred in this matter. If you wish to go through with the sale, we will prepare the deed and arrange for a closing. * * *"

Following a conversation between them on the previous day, the defendant's attorney wrote a letter to plaintiff's

attorney dated February 18, 1966. This letter advised that the defendant was directing the Trust Company to refund plaintiff's deposit, it being impossible for defendant to convey merchantable title. Thereafter plaintiff received a check dated February 21, 1966 from the Trust Company in the amount of his deposit. The check was unconditionally endorsed and cashed by plaintiff on February 25, 1966.

This action was filed on March 23, 1966. Plaintiff prayed (1) that he be declared to have the sole and exclusive right to specific performance of the contract at his election at such time as title to the property is good and merchantable, or (2) alternatively, that he be granted damages for breach of contract.

The district court found, after hearing, that plaintiff in effect had elected to void the contract. He therefore denied both prayers of the complaint. Essentially plaintiff's appeal challenges the correctness of the ruling that he elected to void the contract.

It is clear that the contract itself visualized the possibility that the seller might be unable to convey merchantable title. In that situation the purchaser was given what is denominated as an "election." Whatever its full import, it is clear that one election available to the purchaser was the right to void the agreement and, of vital significance, to recover all payments made. The crucial issue then is whether, as the district court found, the purchaser so elected.

By the letters of February 15, and February 18, 1966, the defendant was putting plaintiff to what it considered to be an election. We need not pause to consider whether the terms of the election stated in the letters accurately reflected the agreement. We do say that the election to void the contract contemplated the return of the deposit to plaintiff. With knowledge thereof, plaintiff accepted and cashed the check after consultation with his counsel. This

was an act which, as to the seller here, was only reasonably compatible with an intention to elect to void the contract. The fact that plaintiff's attorney may have advised plaintiff that he could cash the check without any implication as to "consent" cannot prevail against an inconsistent objective manifestation of his intention.

We conclude that in this setting the cashing of the check representing the return of the deposit supports the ruling below that plaintiff elected to void the contract. The district court therefore properly dismissed the complaint on the merits.

The judgment of the district court is affirmed.